May it please the Court, Frank Bottini for Appellant Emily Diaz. I'd like to request two minutes for rebuttal. This appeal concerns a class action on behalf of purchasers of home warranty contracts from Appleby First American Home Buyers Protection Corporation. After correctly determining in two separate orders that Appellant had stated a valid claim under California Business and Professions Code, Section 17200, the District Court lost its conviction and reversed itself in a third order indicating that Appellant had not alleged a claim pursuant to Maradi Shalal and its progeny. The District Court acknowledged that Appellant predicated her UCL claim on statutes and common law claims other than the UIPA, but nonetheless dismissed the UCL claim under the rationale that those other statutory and common law bases were couched in terms of UIPA violations. Counsel, this issue is, as I understand it, pending before the California Supreme Court, is it not? Yes, Your Honor. I think it's scheduled to be heard on Wednesday. Right. And in that posture, anything we would say on this issue in this case would necessarily be affected by Zhang? I don't think so, Your Honor, because we have two separate authorities that I think I don't expect them to be changed based on the Zhang decision. We have this Court's decision But it could. I mean, in other words, the California Supreme Court will be speaking to the scope of absorption, if you will, by the insurance code or whether you can plead UCLA or USC claims. UCL claims outside the insurance context. Is that what it's essentially dealing with in Zhang? I think that's a fair characterization. So what if we were to write a published opinion before the Supreme Court? That was unlikely, given the Supreme Court moves faster by salary imperative, if nothing else. So they may likely come down. Why shouldn't we just hold on this part of your appeal until we hear what the California Supreme Court has to say? Well, that may well make sense, Your Honor. I think it's unlikely that it's going to have a determinative effect, because we already have the Supreme Court's already spoken in the context of the manufacturer's life decision, where they said so they'd have to, in other words, reverse the manufacturer's life, I think, to get to a result that would... So you're optimistic? Right. Okay. But we, you know, this is a matter of state law we're dealing with. Oh, yes, Your Honor. Very clearly. And they're the authority. That's right, Your Honor. Or not. So if the panel doesn't wish me to address the UCL claim, I can move on to the other issues. What's the other authority that you say is conclusive that we could look to beyond... regardless of John? It's this Court's decision in Chobner v. United of Omaha. That was 225 Fed 3D, 1042. No, you've cited that. That's in our brief. Ninth Circuit opinion. And that decision says it doesn't matter if the predicate act for a UCL claim is... the conduct that gives rise to it is the same conduct that gives rise to a UIPA violation, that there's no attempt to do an Enron around Maradi Shalal, as long as you have a separate basis other than the UIPA for your claim. So I think the Ninth Circuit addressed that issue pretty squarely in Chobner. But as you say, the Supreme Court will be addressing the issue soon. So I'd be happy to move on to the concealment claim if Your Honors think that's the best course. With respect to the concealment claim, the district court, which was brought under California Civil Code Section 1710, the district court did not question the fact that the appellant had established the existence of a duty on Appelee's part to disclose the material facts that were alleged to have been concealed, and didn't question the materiality of the omissions. Instead, the district court dismissed that claim on the basis that plaintiff would have allegedly been able to ascertain the concealed facts based on anonymous and unverified Internet complaints about First American. That constitutes a reversible error because, as the California Court of Appeal in the Vega v. Jones Day case indicated, the mere fact that there's some information in the public domain concerning the facts that were allegedly concealed is not determinative. In fact, it's inconclusive, and it's not appropriate to resolve that issue at the pleading stage. It's an issue of fact that should await a fuller record as discovery is developed. And also, the district court also erred because the type of facts that were alleged to have been concealed in an appellant's complaint were not synonymous with the type that were reflected in the Internet complaints. And I also think, as a matter of public policy, that kind of a decision would not be a good policy for this Court and for California courts to follow. It, in essence, would tell someone who's buying insurance from an insurance company that they have an obligation to go on the Internet and search for complaints and then accept those complaints as true compared to the information that they've received from the insurance company. Kennedy. Is the requirement that they accept them as true, or is the point that they put the purchaser on notice? Well, the pleading requirement is that the plaintiff allege under a concealment claim under 1710 that they're unable to ascertain the true facts. So I think it does would entail a requirement to accept them as true. And it's, again, a consumer places a high degree of reliance on what the insurance company tells them. Although not technically a fiduciary relationship, it is a special relationship. And there's a strong policy to prevent someone from speaking in half-truths. So I think it would just, it's just not fair to tell a plaintiff you have to go on the Internet, search for things. What would a consumer do to try to verify the truth of the Internet complaints? They're anonymous, but they don't know who posted them to the Internet. And they're relying, again, on what the insurance company tells them. And, again, here there were just, especially these type of facts, facts that we claim were concealed, dealt with the relationship between the HVAC people that it was hiring to provide the repairs and replacements under the insurance coverage. So there are sites like EMILY's List, for example, that there are threads or chat rooms on Internet. But does it make any difference if the person, the plaintiff, had access to, let's say, Ms. Diaz actually had an account with EMILY's List, since you have to join it, and she searched? Would that count? Would that be a fact question? Is that what you're saying, that if, in other words, if it went to a jury, that would be appropriate evidence to put before the jury that she was on notice? Right. I think that's correct. It would be... You're not saying that it's irrelevant. It's just it can't be, as a matter of law, the availability can't be the sine qua non of getting through the pleading phase. Correct. At the pleading stage, and it certainly can't counteract the clear allegations in the complaint that she was alleged in very clear, plain English in the complaint. So, in essence, it disregarded the actual allegation and found that, because the complaint referenced some Internet complaints about the company, that the plaintiff may have become, or the plaintiff's counsel may have become aware of, after the lawsuit was filed, that somehow that should vitiate her well-plead cause of action at the pleading stage. So, yeah, again, I think at the evidentiary stage, it might be a factor, and it would be, ultimately, up to the jury to determine that issue of fact. And with respect to the duty, I think, again, it was clear that the plaintiff alleged a duty. In the form of Insurance Code, Section 332, that said each party to a contract has a duty to disclose to the other party all facts which are material or which they believe to be material. So that gives rise to a duty. And under the LaMondrie case, which we cite in our brief, and District Court actually referred to LaMondrie case, there's several other bases of a duty in this case. There's a special relationship. There's the fact that we, Appellant alleged, that First Americans spoke in half-truths. In other words, they volunteered to give some information to the consumers in an effort to get them to try to buy these plans, but it didn't tell them the whole truth. It's similar to the policy under Section 10b-5 of our securities laws, federal securities laws, that even if there's not otherwise an obligation to speak, if you choose to disclose some things, you have to disclose other facts that would be necessary to make the facts you've already disclosed not misleading. And you get to the Rule 68 offer in mootness? Yes. And that's a run-out of your time. Yes. Thank you. The way that the Rule 68 offer works is any party can make that offer. If it's not accepted, it expires and the case goes on, and the issue becomes there's a remedy. The remedy isn't to dismiss the case as moot. The remedy is that if the party that rejected the Rule 68 offer ends up getting a resolution that's less favorable than what was contained in the offer, then the other side gets their costs subsequent to the time the offer's made. So it was reversible error for the Court to dismiss the case as moot on that basis, because we just don't think that's how the Rule 68 offer works. And in addition, the district court erred because the case was not moot. In addition to the monetary relief that appellant sought, there was also declaratory injunctive relief that was sought. The district court conflated the requirements for declaratory injunctive relief. So the district court said, well, you can't get declaratory relief because you're not facing irreparable injury. You don't face irreparable injury. Well, that's the standard for injunctive relief for an injunction, not a declaration. The injunctive relief, though, going forward, she didn't have any policies still in place, did she? That's correct. At the time... And in terms of the declaratory relief, wouldn't legal remedies or legal damages cover the same ground? I don't think so, because one of the allegations was that the defendant... Because the type of conduct that the appellee was alleged to have engaged in was widespread conduct that had an effect on consumers as a whole. And a declaration from a Federal Court saying that they were breaching the implied covenant of good faith and fair dealing might be beneficial to other consumers and also, of course, would be helpful to the plaintiff if the court had allowed the plaintiff to go forward with injunctive relief. We viewed the issue of the fact that she didn't have a plan anymore as similar to the issue of harm that's capable of repetition. There wasn't your plan, so you file your complaint. You can't do anything until the court's rule of the motion is dismissed. By the time you get to that you know about all the unfair business practices, so it's a catch-22. If you renew it, why'd you renew it? If you don't renew it, you don't have standing anymore. So that was the real issue that was faced with that. And we think that under the UCL, the standing was clear. In fact, the district court had found that the plaintiff had standing because she was harmed in her business or property. She paid service call fees. Every time you make a claim under these home protection contracts, you have to pay a $55 service call fee. And she paid money to other contractors to fix the problems because of the fact that First American didn't fix it. And that was alleged in the complaint. Those are all claims that could support a legal judgment. I'm still not sure what declaratory judgment would benefit you that is different or distinct from what a legal judgment should have been. In other words, if you recover damages, doesn't that have the same impact as the declaratory judgment or as the injunctive? Presumptively, what would the injunction have been to pay the past contractors that she had to improperly delegating claims-adjusting activity to these third-party contractors when they were supposed to do it and they had promised to do it under the contract? So it could have resulted in them changing their business practices. If she doesn't have a contract going forward, how can that impact her? I don't think it would impact her, but it would have the potential to benefit the public. And again, if this Court would reverse the district court on the UCL claim, then upon remand she would have a UCL claim and would be entitled to pursue that type of injunctive relief. So if there's a reversal on the offer of judgment issue, then the declaratory and or the injunctive would be less important, right? That's correct, Your Honor. And the last issue that's the subject of the appeal today is the issue of the district court's failure to correct the record. And this court allowed appellant to have the case remanded back to the district court after the notice of appeal was filed to consider that issue. The issue there was the appellee had designated every document produced in the case and every deposition testimony as highly confidential. But didn't most of those deal with the class certification? Yes. Well, you didn't appeal that, did you? We did appeal it, but then the appellee moved to strike the excerpts of record because they hadn't been filed properly with the district court. Well, I guess what I'm asking is, did you appeal to us the class certification issue? We did, but then once the excerpts of record were stricken by this court, we had to abandon that part of the appeal because there weren't the documents in the record sufficient to allow meaningful review. We needed to rely on the documents that were lodged with the court, discussed by all the parties at the class certification hearing, but not technically filed with the court. But don't you in effect give up that claim, then? If you're not appealing the class certification, then the documents are only important because of the class certification. Right, correct, but we are appealing the district court's failure upon remand from this court to grant appellant's motion to correct the record. So if that's reversed, then it gets sent back to the district court to put these documents into the record, and then we could pursue something with the denial of the class certification. But I agree, the class cert order itself is not an issue for this appeal. Why didn't you raise that even if you had incomplete documents to submit? Because the documents that were in the record that we felt warranted a reversal of the order denying class certification were ones that the appellee successfully struck from the record. We would have had to rely, and there was a significant volume of documents. But the thing I'm alluding to is that you could have kept that issue more intact, the striking of the documents, if their class certification issue was still before us. We could have, but again, we thought that we needed the documents that were indisputably relied upon by the district court, discussed by all parties at the hearing. The reporter's transcript makes that very clear. We thought we needed those documents to present a meritorious appeal on the denial of the class cert order. And we cited circuit court authority for the proposition that an appellate court always has to have the ability to review all the things that were relied upon by a district court, even if they weren't admitted into evidence or, quote, filed instead of lodged. So that's the basis of that last part of the appeal, is that we think the district court erred in not granting the appeal. We think the district court erred in not granting our motion to correct the record under circumstances where the information had clearly been presented to the district court, and it was only because of a recent change in the rules that they weren't filed and were only lodged. You may want to save your time. Yes, I'd like to save any time for rebuttal. Thank you. Okay. Please, the court. Joel Siegel for Appellate First American Homebuyers Protection Corporation. I'll begin in sort of reverse order, starting with the rule 10 motion. The standard for review on that issue is whether or not the district court, Judge Huff, intentionally falsified or her decision was plainly unreasonable in denying that motion, and plaintiff has simply – appellant has simply not made that showing. It's additionally – Why wouldn't – if she reviewed and or relied upon those documents, why wouldn't they be part of the record? That's an excellent question. In fact, Judge Huff answered that in her order. She plainly stated that she did not review the unredacted materials on cert. She plainly said that in her order, the order of June 28th. And in fact, therefore, the standard would be whether Judge Huff intentionally misrepresented herself when she made that statement in her order. She intentionally – she directly took on the issue, and she answered in her June 28th order. Now, because it was a June 28th order, the time to appeal that order would have been 30 days thereafter. That time ran. The appellant did not raise this issue until it filed its replacement opening brief more than 30 days later. And while there's some law to the effect that an opening brief can, in fact, give notice of the appeal, can give proper notice, it still must be timely. And because the replacement opening brief was months thereafter, it's not timely. And then thirdly, of course, to Judge Quinn's point, it's moot. It related only to the class cert briefing, and that is plainly not before us today. With your permission, I'll move on to the Rule 68 issues. Yeah. Could you address Justice Kagan's admonition directed at another circuit that it says, so a friendly suggestion to the Third Circuit, rethink your mootness by unaccepted offer theory, and a note to all other courts of appeals, don't try this at home. Yes, I will. It's on behalf of four justices, and I suspect Justice Kagan knows – has more grounds for speculation as to where the fifth vote might come from. Of course. So should we heed her admonition? Yes, no. The answer is no, but I will address it. So yes to that question. The Genesis case does not change the result here under Rule 68 under these facts and under this procedural posture. I think it's a matter of logic. I mean, I think she speaks quite a bit about the notion of contract. You get offer, the offer's turned down. The person doesn't have an ability then to go back in. The offer's gone after it's been turned down. Well, the issue is one of mootness, and I think that the important – Well, how do you get around even the language of Rule 68? It still goes to mootness and the Roper decision, and I think that the Genesis case leaves Roper intact. But it's an offer. It was a rejected offer exactly along the lines of Roper as this Court recognized in Pitts, and this deals with a post-certification offer of judgment, which was rejected, consistent with Rand versus Monsanto, the Seventh Circuit case, and, again, this Court's own history of this procedure in the Pitts decision. And in both Genesis – in Genesis, it dealt with a pre-FLSA collective action. Okay, so it wasn't a Rule 23 case, but it dealt with a pre-what would have been a conditional certification of that action under the FLSA, and whether or not you could strip away a plaintiff's rights prior to the FLSA. Let me kind of walk you through some thinking, and correct me if you think I'm wrong. So plaintiffs come for, you know, a lot of purposes, and they largely control how their own case goes. For some, it would only be an effort to recover a certain amount of money. For other plaintiffs, though, wouldn't a public declaration or a public trial be one of the matters that they seek? I think that under Roper and under Genesis that the plaintiff's interest, that protected interest in having the class heard and representing the class does remain, and that was the result of Roper, and Genesis leaves that intact. I'm talking about Rule 68 generally. For whatever reason, if a plaintiff turns down an offer, why should they be forced to accept the amount that had been offered, even if by all accounts it's sufficient to satisfy the money damages they want? Because there's no case or controversy left under Article III. But there's a lot of purposes that people have in making claims, and one of the purposes is beyond the mere money. I agree, Your Honor. Public airing of the dispute, a public perhaps embarrassment of the defendant are all things that people seek. Understood. And I don't think those are grounds under Article III for a case of controversy under the Roper analysis. And that's why there's an interest that's left in maintaining the class action, because there may be cost shifting, as was part of that analysis, or something akin to a cost shifting analysis, but absent an actual stake in an actual loss, such as the money or what have you, that was exceeded by the Rule 68 offer in this case, as well as in Rand v. Monsanto and Roper, that there is nothing left over except that stake to go ahead and appeal the class action denial, which is exactly what Ms. Diaz still had here after the district court dismissed the case. May I continue? Yeah. I'm not sure you'd persuade, but go ahead. All right. The two matters that Diaz would have wanted to see in the offer of judgment, the declaratory relief and the injunction, as the court noted, she had no longer a contract within which to obtain some relief to remain to her. And, of course, the declaratory relief was, in fact, superfluous and, in fact, would have gone against the Rule 68 mandate that you need not admit guilt, you just simply have to offer, you know, the amount. There's no argument that's been advanced that the amount was less than she was entitled to. Moving on to the UCL claim and then I'll address in turn the concealment claim. The court asked whether or not there was any other way to address the dismissal of the UCL claim other than wait for the Supreme Court's decision in the Jean case, and I would submit that there is. Under the same analysis, under the Rule 68 analysis, there was no ability for Ms. Diaz to obtain the remedies that are afforded by the UCL, restitution on the one hand and injunctive relief on the other hand. Couldn't she get restitution? I didn't understand that argument. She didn't purchase the policy. Well, she bought a package which included a seller-bought insurance. She was a beneficiary of it, so if she's not getting the benefit of her bargain that she made with the seller, whoever paid for the policy, she's not getting what she thought she got. So I don't understand why she wouldn't, as a third-party beneficiary of that policy, she wouldn't have a claim to a refund. Well, I think under the Korea supply case that she needs to have a stake in the actual dollars, and in her transaction, the seller chose First American. The seller paid for the funds that a seller – I'm sorry, for the warranty under seller's own funds, and therefore Ms. Diaz never had the stake to seek restitution. There were no dollars that left her pocket for this. Who paid for the repairs when the insurance policy didn't cover? Didn't perform. The repairs that were done were often not paid for. It was often a tenant's – But that were. Pardon me? That were. You're getting factual on it. You're saying, as I understand your theory, it's a legal conclusion, not a factual conclusion. It's factual to the extent that the dollars for the policy came from the seller, but the benefit of the policy adhered to the benefit of the property owner, who had to, in the absence of performance, come up with dollars potentially. Whether she did or not, that would be a question of whether she's entitled to those dollars, but the fact that she didn't buy the policy herself directly but got it as part of a package, that doesn't respond to that. So I really don't understand that. If I'm a homeowner, for example, I buy a house, and part of the attraction to buy the house is that the seller will sell it, in effect, with a warranty, or you go to a dealer and the dealer throws it in in a service warranty. I don't pay for it in some direct sense, although I doubt that these always get thrown in without some economic benefit to the seller and the overall pricing. So if that's the case, are you suggesting that if, in fact, American didn't, First American really didn't perform, that there were out-of-pocket expenses that she had, that her only recourse is to go after the seller, who in turn would then turn around and seek indemnification from First American for breach of contract? No, that's not what I'm arguing. And, in fact, the district court allowed the breach of contract claim to go forward. I thought. Just for that purpose. What I'm focusing on is that her claim for restitution focused on the premiums paid, and it's that premium paid for which she would not have standing to seek restitution. So you're saying that she could get damages for what the impact was, but she can't, as a remedy, can't get restitution of what was paid by the seller? That's correct. And that's in her breach of contract claim lived on well beyond the pleading stage, and became a major issue at time of search. That's right. Okay. Last but not least, I'll address briefly the concealment claim. I think the best authority there is the United Guarantee case out of the district court in 2009, focusing on the insurance code section 332. That section. I'm sorry. What was the case? Insurance code 332. No, no, the case. United Guarantee. And insurance code 332, which, you know, we heard about this morning, supplements the contract. It provides a contractual duty to disclose, both on the part of the insured and the insured. And if it breached, if violated, I should say, it results in a right of contractual rescission. It is a contract supplement. It does not give rise to a tort duty, whether alone, you know, in support of a fraud type of claim or a concealment claim, or, for that matter, the UCL. And the United Guarantee is squarely on point. There is no case that has been submitted, cited to, that would justify going beyond the United Guarantee case and finding it. How about Pastoria? You know, Pastoria gives no analysis to this issue. And it doesn't tell you whether they're talking about it as a tort, you know, whether 332 gives you a tort duty or a contract duty. It just sort of jumps over that. And it really pales in comparison to the incredibly detailed analysis of the United Guarantee case. So I recognize Pastoria is out there. But it's weak support, if any, for the idea that you can attach a tort duty to disclose above and beyond what 332 is, which is a contractual supplement. Thank you. Thank you. Thank you all. With respect to the motion to correct the record, the standard is an abuse of discretion. We think there was an abuse of discretion here. There was no prejudice to the district court or to the appellee in having the record corrected so that we could appeal the class cert denial order. Did the district judge indicate that she had not considered any of those materials in making the class certification decision? She said that in the order, but that's contradicted by the reporter's transcript, where she heavily discussed the items that were lodged but not filed. With respect to the Rule 68 offer, as Your Honors mentioned, if an offer is rejected, it is deemed withdrawn as a matter of contract principles. Also, if the district court was going to dismiss the case under 12D1 for lack of subject matter jurisdiction, it ought to have required the appellee to pay the money offered in the judgment to the appellant and then enter judgment in plaintiff's favor. It didn't do that, even though we filed a motion asking the district court to do that as an alternative if she was going to dismiss it. The Ninth Circuit decided in the Pitts case recently that there is enough subject matter jurisdiction if a class action plaintiff wants to appeal denial of class certification. With respect to the concealment claim and the restitution also that the plaintiff paid, the plaintiff paid two separate service call fees to appellee. It was $55 each. So there was money that went beyond the premium directly paid by the plaintiff to the defendant. So there clearly is a basis for the restitution. His argument is you get that as a breach of contract. Well, I think the issue was they brought it up in the context of the UCL claim, saying that the UCL claim should be dismissed even if, however, the Supreme Court comes down because the plaintiff couldn't pursue or had no restitution. I think that was the argument that they were advancing. So this was the point, is there was money paid by the plaintiff to the defendant beyond the premiums in the form of the service call fees. And with respect to the concealment claim, we do think the pastorea is the more well-reasoned case, that there is a duty of an insurance company to disclose under Insurance Code 332. But beyond that, we have three separate bases for the existence of a duty here under the concealment claim, as mentioned in the Lermandry case cited by the district court. There was the special relationship here. There was the fact that First Americans spoke in half truce to plaintiff and other consumers, disclosed certain things, you know, voluntarily chose to say certain things but didn't disclose other things necessary to make them not misleading. And also the information that we claim was concealed was exclusively within the knowledge of First American. And those are all separate bases for the existence of a duty under a concealment claim. And for that reason, we think that claim was also improperly dismissed. Thank you. And this matter will stand submitted.
judges: Gwin, Pregerson, Fisher